# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

REDI-MIX SOLUTIONS, LTD., and §
2S TRANSPORT, LLC f/k/a H&S §
TRANSPORT, LTD., §
§
   *Plaintiffs*, §
§
v. § Civil Action No. 6:16-cv-298-RWS-KNM
§
EXPRESS CHIPPING, INC., and §
STANLEY KEITH KNOX, §
§
   *Defendants.* §

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

The above-styled matter is referred to the undersigned for all pretrial matters in accordance with 28 U.S.C. § 636. Before the Court is Plaintiffs', Redi-Mix Solutions, Ltd., ("Redi-Mix") and 2S Transport, LLC f/k/a/ H&S Transport, Ltd. ("H&S") (collectively, "Plaintiffs") Supplement to Application for Temporary Injunction (Doc. No. 6). Defendants filed a Response in opposition to the application (Doc. No. 23). Plaintiffs then filed a Reply (Doc. No. 24) and Defendants filed a Sur-Reply (Doc. No. 25). After the parties completed the briefing, the Court held a hearing on October 12, 2016. For the reasons set forth herein, the Court recommends that Plaintiffs' Application for Temporary Injunction be **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Redi-Mix and Express Chipping directly compete in the business of concrete chipping, providing services related to cleaning and removing concrete from concrete mixer drums. Doc. No. 1 Ex. 3. ¶¶ 13, 18. Redi-Mix hired Knox as the Vice President of Sales & Marketing. Doc.

No. 6 ¶ 2. As a condition of his employment with Redi-Mix, Knox was required to sign an employment contract that contained a nondisclosure agreement, non-solicitation agreement, and a noncompete agreement (collectively "noncompete agreement") for both H&S and Redi-Mix. *Id.* Craig Scott is the president of both Redi-Mix and H&S. *Id.* Ex. 1. The relevant portions of the noncompete agreements state:

> Following the termination of employment with [Redi-Mix], for any reason, Stanley Knox agrees not to engage directly or indirectly in any business substantially similar to, or in competition with, the business of [Red-Mix], it [sic] successors or assigns, for a period of Two (2) Years, within a radius of 100 miles of Redi-Mix [sic] home address or within a Twenty-Five (25) mile radius of any customer in any area where he directly worked while employed with [Redi-Mix].

> Mr. Knox also agrees that for the above stated period of two years, he will have absolutely no contact with any customers that were customers of [Redi-Mix's] during the time of his employment, or potential customers that were contacted by him or [Redi-Mix] within ninety (90) days prior to, or after, his termination/voluntary leave from employment of [Redi-Mix].

> Mr. Knox also agrees that for a period of two (2) years following the termination of his employment with [Redi-Mix], he will not induce, recruit or solicit any of Redi-Mix's employees or any independent contractors which [Redi-Mix] uses, to terminate their employment or service with Redi-Mix and enter into another employment/contract arrangement with Stanley Knox or any third party.

*Id.* Ex. A. Both agreements had a section that stated the proffered consideration for the noncompete agreements. *Id.* Under the H&S Contract, Scott offered to relieve Knox of a $125,000 debt that he owed on a loan secured by a promissory note that Scott gave Knox in 2002. *Id.* Additionally, H&S promised to give Knox confidential information. *Id.* Under the Redi-Mix agreement, Redi-Mix paid for living expenses, moving expenses, and miscellaneous legal fees. *Id.* Additionally, Redi-Mix promised to give Knox confidential information and incurred the extra risk of giving him that information because Knox had previously been in the concrete industry. *Id.*

In July 2015, Knox voluntarily elected to move to Florida. *Id.* ¶ 5. On August 11, 2015, Redi-Mix terminated Knox's employment. Doc. No. 17 ¶ 17. After his termination, Knox started his employment with Express Chipping in Florida. Doc. No. 6 ¶ 8. Plaintiffs filed this suit to enforce their noncompete agreements with Knox, alleging Knox improperly attempted to solicit business from Redi-Mix's customers and recruited Redi-Mix's employees in violation of the noncompete agreement. Doc. No. 1 ¶ 17–18.

Plaintiffs originally filed this suit in state court in Anderson County, the 369th Judicial District. Shortly thereafter, the state court entered a temporary restraining order. Doc. No. 1 Ex. 4 ("September TRO") at 12–15. The September TRO restrained Knox and Express Chipping from, among other things, "engaging directly or indirectly in any business substantially similar to, or in competition with, the business of Plaintiffs Redi-Mix and H&S within a radius of one hundred (100) miles of Palestine, Texas, or within a twenty-five (25) mile radius of any customer in any area where Knox directly worked while employed with Plaintiffs Redi-Mix and H&S." September TRO ¶ iii.

On March 28, 2016, the state court granted Plaintiffs' application for a second TRO ("March TRO"), and set a hearing on Plaintiffs' request for a preliminary injunction. Doc. No. 1 Ex. 3 at 18–20. The court's March TRO contained substantially the same language as the September TRO, with one addition: it restrained Knox and Express Chipping from competing with Plaintiffs' business "within a twenty-five (25) mile radius of any customer in any area where Knox directly worked while employed with Plaintiffs Redi-Mix and H&S *listed on Exhibit 'A.'*" March TRO ¶ iii (emphasis added). Exhibit A, attached to the March TRO, lists 934 customers. Ten days later, on April 7, 2016, Defendants removed the case to federal court. *See* Doc. No. 1.

## APPLICABLE LAW

Plaintiffs seek a preliminary injunction to prevent the further violations of a noncompete agreement. *See generally* Doc. No. 6. The prerequisites for a temporary restraining order or a preliminary injunction are: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs any damage that the injunction may cause for the nonmovant; and (4) that the injunction will not disserve the public interest. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011); *Commonwealth Life Ins. Co. v. Neal*, 669 F.2d 300, 303 (5th Cir. 1982). Since a temporary restraining order or a preliminary injunction is such an extraordinary and perhaps drastic remedy, one is not granted unless the movant clearly carries the onerous burden of persuasion as to all of the elements. *Janvey*, 647 F.3d at 595; *Commonwealth*, 669 F.2d at 303. In other words, the movant has a cumulative burden to prove each of the four enumerated elements. *Janvey*, 647 F.3d at 595; *Commonwealth*, 669 F.2d at 303. A preliminary injunction "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008). The decision of whether to grant or deny a temporary restraining order or a preliminary injunction is left to the sound discretion of the trial court. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).

## ANALYSIS

Plaintiffs ask the Court to grant a preliminary injunction to stop Knox from continuous violations of the noncompete agreements he signed as a condition of his employment with Redi-Mix. Doc. No. 6 ¶ 15. Plaintiffs argue that they have made a strong enough showing to meet the four elements laid out above. *See generally id.* Defendants respond that Plaintiffs have failed to

meet the onerous burden placed on movants asking for injunctive relief. *See generally* Doc. No. 23.

## I.  Substantial Likelihood of Success on the Merits

To show a substantial likelihood of success on the merits, Plaintiffs must show that there is a valid and enforceable noncompete agreement. In Texas, a noncompete agreement is enforceable as long as it meets the requirements of Section 15.50 of the Texas Business and Commerce Code. *Light v. Centel Cellular Co. of Tex.*, 883 S.W.2d 642, 643–44 (Tex. 1994) *overruled on other grounds by Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 772 (Tex. 2011). Section 15.50 requires that the agreement be ancillary to or part of an otherwise enforceable agreement at the time the agreement is made. TEX. BUS. & COMM. CODE § 15.50. A promise for continued employment can serve as an otherwise enforceable agreement. *Light*, 883 S.W.2d at 645 (citing *E. Line & Red River R.R. Co. v. Scott*, 10 S.W. 99, 102 (Tex. 1888)). However, at-will employment is illusory because the employer can discontinue employment at any time. *Id.* Therefore, at-will employment cannot be an otherwise enforceable agreement for a noncompete agreement on its own. *Id.* An at-will employer must provide independent consideration to have a valid noncompete agreement. *See id.*

Consideration is a present exchange bargained for in return for a promise and consists of benefits and detriments. *Burges v. Mosey*, 304 S.W.3d 623, 628 (Tex. App.—Tyler 2010, no pet.) (citing *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991)). These "detriments must actually induce the parties to make the promises, and the promises must induce the parties to incur the detriments." *Id.* For a noncompete agreement, consideration must be "reasonably related to an interest worthy of protection." *Marsh*, 354 S.W.3d at 775. Generally,

trade secrets, confidential information, and goodwill are reasonably related to an interest worthy of protection and therefore are sufficient consideration for a noncompete agreement. *Id.*

Additionally, under Section 15.50, the limitations of time, geographical area, and scope of activity must be reasonable. TEX. BUS. & COMM. CODE § 15.50. To be reasonable, the limitations must not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee. *Id.*

Plaintiffs argue that the noncompete agreements were part of an otherwise enforceable agreement and that the agreements impose reasonable limitations meeting both requirements of Section 15.50. Doc. No. 6 ¶¶ 16–22. Defendants claim that Plaintiffs have not met either of the requirements laid out in Section 15.50. *See generally* Doc. No. 23.

### A.    Whether the Noncompete Agreements are Enforceable

Plaintiffs contend Knox entered into the noncompete agreement ancillary to his at-will employment and that Plaintiffs additionally provided independent consideration. Doc. No. 6 ¶¶ 16–17; Doc. No 24 ¶ 1. Knox entered into two separate employment agreements as a condition of his employment with Redi-Mix. Doc. No. 6 ¶ 2. He entered into an agreement with H&S, which contains a noncompete agreement. *Id.* Additionally, Knox entered into an agreement with Redi-Mix that also contains a noncompete agreement. *Id.* Each noncompete agreement has a section labeled consideration, which states the proposed independent consideration for the noncompete agreements. *Id.* Ex. A.

Defendants contend that the methods of consideration listed in both the H&S contract and the Redi-Mix contract are not valid. *See generally* Doc. No. 23. Therefore, Defendants argue the agreements are not ancillary to or part of an otherwise enforceable agreement. *Id.* The Court will look at each agreement in turn.

### 1. H&S Contract

The H&S contract states that the consideration for the agreement is: (1) "H&S Transport, by and through, Craig Scott, is forgiving a $125,000.00 debt owed to him by Mr. Knox;" and (2) "H&S Transport agrees to allow Mr. Knox to have access to all customers, pricing, phone numbers, suppliers, and all other information that is considered to be private and protected trade secrets to H&S. This information would not be disclosed if this non-compete had not been executed." Doc. No. 6. Ex. A. Defendants contend that neither method of consideration is valid. Doc. No. 23 ¶¶ 29-31.

### a. Knox's Prior Debt

The first method of independent consideration offered by H&S is based on money that its president, Craig Scott, loaned Knox in 2002. *Id.* ¶ 6. Defendants argue that this debt was previously discharged in a bankruptcy proceeding in 2004 and therefore cannot be valid consideration. *Id.* ¶ 29.

At the hearing, Plaintiffs presented evidence that neither party contemplated Knox signing a noncompete agreement, as a condition of employment in 2014, when Scott loaned Knox the money in 2002. Because the parties did not contemplate the noncompete agreement, Scott did not make the loan to induce Knox to sign the noncompete agreement. In other words, the loan was not a present exchange bargained for to induce the noncompete agreement. *Burges*, 304 S.W.3d at 628. Therefore, the loan was not consideration for the noncompete agreement. *Id.*

Plaintiffs contend that even though the loan is not consideration for the noncompete, Scott's forgiveness of the loan in 2014 is valid consideration. Doc. No. 6. Ex. A. The forgiveness of a debt can be effective consideration. *See Bryant v. Cady*, 445 S.W.3d 815, 820 (Tex. App.— Texarkana 2014, no pet.) (holding that consideration exists when "the promisee surrenders a

legal right that the promisee otherwise would have been entitled to exercise"). Because a lender has the legal right to be paid what it is owed, a lender who gives up that right has suffered a detriment. *See Jim Maddox Props., LLC v. WEM Equity Capital Invs., Ltd.*, 446 S.W.3d 126, 132 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (holding that "a promissory note is a contract evincing an obligation to pay money"). Therefore, forgiving a debt can be consideration. *Id.*; *Bryant*, 445 S.W.3d at 820. Here, Scott is the lender and has a legal right to collect what is owed on the debt. Therefore, forgiveness of the debt could be valid consideration.

However, even if forgiveness of the loan could be valid consideration in some instances, in this case, it cannot. Scott made the loan in 2002 and Knox defaulted. Doc. No. 23 Ex. C. Because Knox failed to make payments, Scott sued Knox for breach of the promissory note. *Id.* Subsequently, Knox filed for bankruptcy and Scott's lawsuit was stayed pending the resolution of the bankruptcy proceeding. *Id.* Ex. E; *Id.* 23 Ex. F. After his suit was stayed, Scott appeared in the bankruptcy proceeding, and the debt was discharged in August 2004. Doc. No. 23 Ex. E.; Doc. No. 23 Ex. F. When the debt was discharged in the bankruptcy proceeding, Scott no longer had a legal right to collect the debt. *See* 11 U.S.C. § 524. A discharge in a Title 11 Bankruptcy proceeding "operates as an injunction against the commencement or continuation of an action, the employment process, or an act to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." *Id.* Therefore, neither Scott nor H&S incurred any detriment by forgiving the debt that the court discharged in a bankruptcy proceeding. *See Bryant*, 445 S.W.3d at 820. Without any detriment to induce Knox's promise, the forgiveness of the debt is not valid consideration. *Burges*, 304 S.W.3d at 628.

### b. Confidential Information

The second method of consideration H&S contained in the agreement was the promise to provide Knox with confidential information. Doc. No. 6 Ex A. Defendants argue H&S never hired Knox or provided Knox with any confidential information. Doc. No. 23 ¶¶ 29, 30. Therefore, Defendants contend there is no valid consideration for the H&S noncompete agreement. *Id.*

A promise to give an employee confidential information in exchange for the employee signing a noncompete agreement, is illusory consideration. *TMC Worldwide, L.P. v. Gray*, 178 S.W.3d 29, 36 (Tex. App.—Houston [1st Dist.] 2005, no pet.). In order for a promise to be valid consideration, the employer must first make the promise and then must actually deliver the confidential information at or near the time the employee makes the promise to keep the information confidential. *Id.* (citing *Wright v. Sport Supply Grp., Inc.*, 137 S.W.3d 289, 297 (Tex. App.—Beaumont 2004, not pet.)).

Plaintiffs have not made a strong showing that H&S ever provided Knox with confidential information. *See generally* Doc. No. 6; Doc. No. 17; Doc. No 24. Plaintiffs assert that Knox worked for Redi-Mix, but do not make the same assertion about H&S. Doc. No. 6 ¶ 2; Doc. No. 17 ¶¶ 7, 18. Plaintiffs additionally assert that Redi-Mix gave Knox access to the confidential information listed in the employment agreement but again do not make the same assertion about H&S. Doc. No. 17 ¶ 12–14. The sole allegation that Plaintiffs make that Knox received confidential information from H&S is: "following Defendant Knox's execution of the Non-Compete Agreements, Plaintiffs in fact provided him with confidential information." Doc. No. 6 ¶ 16. The state of the record does not indicate that H&S ever provided Knox with any confidential information. Without actually providing it, the promise to provide confidential

information is illusory consideration and not valid to support the noncompete agreement. *TMC Worldwide*, 178 S.W.3d at 36.

The burden on a movant for preliminary injunction is a very onerous one; the movant must make a "clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 24. Here, H&S has failed to meet that burden. Because H&S did not clearly show a substantial likelihood of success on the merits, the Court recommends **DENYING** H&S's application for preliminary injunction.

### 2. Redi-Mix Contract

The Redi-Mix contract states that the consideration for the noncompete is:

> 1. **CONSIDERATION.** In complete consideration for Stanley Knox agreeing to, and abiding by, all the terms of this non-compete, and the non-solicitation conditions listed herein, [Redi-Mix] agrees to pay for living expenses, cost of moving, and furnishing for the house, and Misc. legal fees, totaling a sum of $32,000.
>
> 2. Further, and in complete consideration for the terms of this non-compete, [Redi-Mix] agrees to hire Stanley Knox, and give him access, as his position calls for, access to private pricing, client lists, customers, and other trade secrets usually kept private and only accessed by the owners of Redi-Mix
>
> 2. [sic] Also, In [sic] full consideration for this non-compete, Redi-Mix is incurring the extra risk and exposure of hiring Mr. Knox, because he has previously been in this Business, or similar business, and the risk of exposing Redi-Mix's clients, pricing, and other trade secrets, poses a special risk in this case

Doc. No. 6 Ex. A. Defendants argue that none of the consideration offered by Redi-Mix is valid consideration. *See generally* Doc. No. 23.

### a. Living Expenses

Redi-Mix contends it paid for Knox's living expenses as consideration for the noncompete agreement. Doc. No. 6 Ex. A. Defendants argue that this is not valid consideration

for three reasons: (1) Knox thought that the living expenses were a gift; (2) Redi-Mix spent the money on the expenses before Knox signed the agreement; and (3) the amount claimed is speculative and overstated. Doc. No. 23 ¶ 9.

When examining consideration, it is the Court's responsibility to look to the intent of the parties. *See Connell v. Provident Life & Accident Ins. Co.*, 224 S.W.2d 194, 196 (Tex. 1949). The Court is to determine if the parties intended to incur a detriment in order to induce a promise. *See id.*; *Burges*, 304 S.W.3d 628 (citing *Roark*, 813 S.W.2d at 496). Here, Redi-Mix provided evidence that it purchased furniture for Knox, leased an apartment for Knox, and provided other living expenses to Knox.[1] This evidence, coupled with the noncompete agreement, shows the parties' intent. Scott, acting on behalf of Redi-Mix, purchased these items and spent this money in order to get Knox to work for Redi-Mix. As a condition of his employment with Redi-Mix, Redi-Mix required Knox to sign the noncompete agreement. In other words, it was Redi-Mix's intent to incur the detriment of paying for these expenses in order to induce Knox's promise not to compete. *Burges*, 304 S.W.3d 628 (citing *Roark*, 813 S.W.2d at 496). Additionally, Knox was aware that these expenses served as consideration for the agreement; it was listed as consideration on the agreement. Doc. No. 6. Ex. A.

Further, Defendants argue that the amount of money Redi-Mix spent is speculative and overstated. However, the actual amount spent is not important to the analysis. What does matter is the intent of the parties when making the agreement. *See Connell*, 224 S.W.3d at 196. To the extent that Defendants contend that the expenses are insufficient to "buy a twenty-four month noncompete" agreement, their argument is unpersuasive for two reasons. Doc. No. 23 ¶ 34. First, assuming arguendo the living expenses are insufficient or nominal, "the recitation of nominal

---

[1] At the hearing, the Court admitted Plaintiffs' Exhibit 2. This document contained a list created by Mr. Craig Scott and Mrs. Brandi Scott of the money Redi-Mix provided to Knox and money spent on Knox. It also contained the sublease agreement for Knox's apartment and various receipts for furniture for Knox.

consideration in a contract is sufficient to validate the contract." *Dale v. Alethes, LLC*, 2013 WL

12114867, at *3 (W.D. Tex. July 1, 2013) (citing *1464-Eight, Ltd. v. Joppich*, 154 S.W.3d 101,

111 (Tex. 2004); *Westfield Dev., Inc. v. Rubashkin*, 2007 WL 491115, at *4 (Tex. App.—

Houston [1st Dist.] 2007, no pet.) (mem. op.); *McKay v. Tally*, 220 S.W. 167, 170 (Tex. Civ.

App.—Amarillo 1920, no writ); *Watson v. Tipton*, 274 S.W.3d 791, 801 (Tex. App.—Fort Worth

2009, pet. denied); *Uriarte v. Prieto*, 606 S.W.2d 22, 24 (Tex. Civ. App.—Houston [1st Dist.]

1980, write ref'd n.r.e.)). Second, the living expenses are not Redi-Mix's only claim for

consideration, Redi-Mix also claims confidential information as consideration, which is

addressed below. Doc. No. 6 Ex. A. The living expenses serve as valid consideration for the

noncompete agreement.

### b. Confidential Information

The Redi-Mix contract also states that the consideration for the noncompete agreement is

the promise to give Knox confidential information and the extra risk of giving him this

information because Knox previously held a job in the concrete industry. *Id.* Defendants do not

dispute that Redi-Mix delivered the confidential information to Knox. *See generally* Doc. No.

23. Instead, Defendants argue that the delivery of confidential information in this case cannot be

consideration because Plaintiffs attached a list of 934 customers as Exhibit A to the March TRO

and again filed the list in the current federal court proceeding, therefore destroying the list's

confidentiality. *Id.* ¶ 35.

Section 15.50 of the Texas Business and Commerce Code requires that the covenant not

to compete be ancillary to or part of an otherwise enforceable agreement *at the time the

agreement is made*. Tex. Bus. & Comm. Code § 15.50 (emphasis added). Accordingly, when

determining if the plaintiff has satisfied the consideration requirement, the relevant inquiry is

whether there is valid consideration at the moment the agreement is made. *TMC Worldwide*, 178 S.W.3d at 36. Moreover, when the claim of consideration is the promise to give confidential information, the Court must determine if the employer actually delivers the confidential information at or near the time the employee makes the promise to keep the information confidential. *Id.*

At the time the agreement was made, Redi-Mix promised to give Knox confidential information. *Id.* (citing *Wright*, 137 S.W.3d at 297). Additionally, Redi-Mix actually delivered that confidential information at or near the time Knox promised to keep the information confidential. Doc. No. 17 ¶ 14. This meets the requirements established in *TMC Worldwide* for a promise to give confidential information to be valid consideration. 178 S.W.3d at 36 (citing *Wright*, 137 S.W.3d at 297).

Defendants do not dispute that Redi-Mix promised to give Knox the customer list. *See generally* Doc. No 23; Doc. No. 25. Additionally, Defendants do not dispute that Redi-Mix actually shared the customer list with Knox. *See generally* Doc. No 23. Instead, Defendants argue that the public disclosure of 934 of Redi-Mix's customers destroyed the confidentiality of the information given to Knox. *Id.* ¶ 35. Therefore, Defendants contend that the promise to give confidential information cannot be valid consideration, because now that information is not confidential. *Id.* Defendants impliedly argue the relevant time period is not the time the agreement was made, but is instead the time of disclosure of the customer list in the March TRO or the time of the filing of the list in the current proceeding. *Id.* However, Defendants offer no case law, and the Court found no case law, to support this contention. *See generally id.* Indeed, the case law suggests the relevant inquiry is whether there was consideration at the time the agreement was made. *TMC Worldwide*, 178 S.W.3d at 36 (citing TEX. BUS. & COMM. CODE §

15.50). Therefore, at the time the agreement was made, the customer list was confidential and was valid consideration.

Even if the public disclosure destroyed the confidentiality of the customer list to the extent it served as consideration for the agreement, Redi-Mix provided additional confidential information that can serve as consideration. Redi-Mix also provided Knox with the client contact for each customer, pricing information, and an employee list. Doc. No. 17 ¶ 14. At the hearing, Plaintiffs argued that the client contact is important information to protect for the goodwill of the company. Additionally, Plaintiffs argue that the pricing information and employee list was information that Knox had access to but was not available to the public. Doc. No. 24 ¶¶ 1, 11. The client contact, pricing information, and the employee list are all examples of the confidential information disclosed to Knox which is reasonably related to an interest worthy of protecting. *Marsh*, 354 S.W.3d at 775. Therefore, even if the customer list is not valid consideration, the other confidential information given to Knox is valid consideration. Accordingly, Redi-Mix's agreement was ancillary to or part of an otherwise enforceable agreement.

### B. Whether the Limitations in the Agreements Are Reasonable

According to Section 15.50, the scope of a temporary injunction is not supposed to be a greater restraint than necessary to protect the goodwill or other business interest of the promisee. TEX. BUS. & COMM. CODE § 15.50. The parties disagree on whether the limitations contained in the noncompete agreement are reasonable. Plaintiffs contend that the limitations are reasonable. Doc. No. 6 ¶ 18. Alternatively, Plaintiffs argue that the Court should reform any limitation it finds to be unreasonable. *Id.* ¶ 22. Defendants assert that the limitations contained in the agreement are an unlawful restraint on trade. Doc. No. 23 ¶¶ 36–43.

### 1. Scope

Plaintiffs contend that the scope of the restraint on Knox is reasonable. Doc. No. 6 ¶ 19. Plaintiffs identify the activity restricted as "contact with any customers that were customers of [Redi-Mix's] during the time of his employment, or potential customers that were contacted by him or [Redi-Mix] within ninety (90) days prior to, or after, his termination." *Id.* Because the scope of activity is limited to customers Knox came in contact with, Plaintiffs argue that the scope is reasonable. *Id.* (citing *Arthur J. Gallagher & Co. v. Babcock*, 703 F.3d 284, 289–90 (5th Cir. 2012); *Am. Express Fin. Advisors, Inc. v. Scott*, 955 F.Supp. 688, 692–93 (N.D. Tex. 1996)). Defendants contend that the agreement is an unlawful restraint on trade because it prohibits all contact between Knox and the list of Redi-Mix customers. Doc. No. 23 ¶ 36 (citing *Rapid Settlements, Ltd. v. Settlement Funding, LLC*, 358 S.W.3d 777, 790 (Tex. App—Houston [14th Dist.] 2012, no pet.)). This includes anytime a customer initiates contact with Knox and additionally prevents Knox from contacting a customer for any reason, even if it is something unrelated to concrete. *Id.* (citing *Rapid Settlements*, 358 S.W.3d at 790).

Plaintiffs cite *Arthur J. Gallagher & Company*, where the Fifth Circuit held that preventing an insurance employee from any contact with clients regarding any insurance related services that the employee worked with while employed was a reasonable limitation. 703 F.3d at 289–90. However, the noncompete agreement in that case prohibited contact about the insurance business, the field in which the employee worked. *Id.* Here, Plaintiffs ask for a prohibition on all contact, including contact not related to the concrete industry. Doc. No. 6. Ex. A. That is broader than necessary to protect the business interests of Plaintiffs and is therefore unreasonable.

Additionally, Redi-Mix's noncompete agreement prevents customers from contacting Knox. *Id.* When faced with a similar limitation, a Texas court held that preventing a customer

from initiating contact creates an unreasonable restriction on trade. *Rapid Settlements*, 358 S.W.3d at 790 (citing TEX. BUS. & COMM. CODE § 15.05). Because the noncompete prevents customers from contacting Knox, it is an unreasonable restraint on trade. *Id.* Therefore, that limitation is broader than necessary to protect the business interest of Redi-Mix and consequently is also unreasonable.

However, when a noncompete agreement is ancillary to or part of an otherwise enforceable agreement, the Court must reform any unreasonable limitation to make it reasonable. TEX. BUS. & COMM. CODE § 15.51. Here, Redi-Mix's noncompete agreement is ancillary to or part of an otherwise enforceable agreement. Therefore, the Court recommends enforcing the noncompete agreement, but also recommends reforming the scope of the agreement. The Court recommends enforcing Redi-Mix's noncompete agreement only to the extent it prevents Knox from contacting any customers that were customers of Redi-Mix's during the time of his employment, or were potential customers that were contacted by him or Redi-Mix within ninety (90) days prior to, or after, his termination from employment with Redi-Mix about the concrete business.

## 2. Geographic Area

Plaintiffs argue that the geographic area is reasonable because it is limited to the territory that Knox worked while employed by Redi-Mix. Doc. No. 6 ¶ 20 (citing *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 793 (Tex. App.—Houston [1st Dist.], 2001, no pet.). Defendants claim the geographic limitation placed in the agreement is too broad, ambiguous, and vague to discern where Knox is prohibited from competing. Doc. No. 23 ¶ 37.

Texas courts and federal courts within this circuit have held that a reasonable area for a covenant not to compete is the area where the employee worked while employed by the

employer. *E.g.*, *Butler*, 51 S.W.3d at 793; *Merrit Hawkins & Assocs., LLC v. Gresham*, 79 F. Supp. 3d 625, 640 (N.D. Tex. 2015). The geographic restriction here is within "100 miles of [Redi-Mix], home address, or within a Twenty-Five (25) mile radius of any customer in any area where [Knox] directly worked while employed with [Redi-mix]." Doc. No. 6 Ex. A. The language is not vague or ambiguous; it lays out clear parameters. These parameters are tailored to the areas where Knox worked while he was employed by Redi-Mix. *Butler*, 51 S.W.3d at 793; *Merrit Hawkins*, 79 F. Supp. 3d at 640. The geographic restraint in the noncompete agreement is reasonable.

### 3. Time

Plaintiffs contend that two years is a reasonable restriction for a noncompete agreement. Doc. No. 6 ¶ 21. Defendants make only an indirect argument that the restriction is longer than Knox's employment, but offer no argument or case law to support why this should change the Court's analysis. Doc. No. 23 ¶ 44.

Texas courts have repeatedly held that two years is a reasonable time frame for a noncompete agreement. *See Gallagher Healthcare Ins. Servs. v. Vogelsang*, 312 S.W.3d 640, 655 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (*citing Arevalo v. Velvet Door, Inc.*, 508 S.W.2d 184, 186 (Tex. Civ. App.—El Paso 1974, writ ref'd n.r.e.)); *Weber v. Hesse Envelope Co.,* 342 S.W.2d 652, 656 (Tex. Civ. App.—Dallas 1960, no writ); *Chandler v. Mastercraft Dental Corp. of Tex.*, 739 S.W.2d 460, 464 (Tex. App.—Fort Worth 1987, writ denied); *AMF Tuboscope v. McBryde*, 618 S.W.2d 105, 108 (Tex. Civ. App.—Corpus Christi 1981, writ ref'd n.r.e.) (citing *Arevalo*, 508 S.W.2d 184). The two year limitation is reasonable.

## II.     Substantial Threat of Irreparable Harm

Plaintiffs allege that they will suffer irreparable harm in three different ways if the Court does not grant the injunction. Doc. No. 6. ¶ 25. First, Plaintiffs argue Knox will continue to divulge and misuse confidential and proprietary information. *Id.* (citing *Transperfect Translations, Inc. v. Leslie*, 594 F. Supp.2d 742, 757 (S.D. Tex. 2009)). Second, Plaintiffs will suffer harm from the loss of business goodwill from Knox's solicitation of customers. *Id.* (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wright*, 1993 WL 13036199 (N.D. Tex. July 2, 1993)). Finally, Plaintiffs contend that Knox's use of confidential information and the possible loss of customers are sufficient to establish irreparable harm. *Id.* (citing *Transperfect Translations*, 594 F. Supp. 2d at 757).

Defendants simply contend: "Plaintiffs have offered no evidence of harm caused by Knox in breach of the covenants not to compete and cannot seek injunctive relief without a showing of harm." Doc. No. 23 ¶ 45. The Court assumes that the Defendants' argument rests on the public disclosure of Plaintiffs' confidential information. However, Defendants provide no case law or argument as to why the public disclosure of the 934 customers eliminates the harm Redi-Mix would suffer if Knox violates his noncompete agreement.

There is more to the noncompete agreement than keeping the customer list confidential. While the customer list was filed, the specific client contact with each customer was not filed. Plaintiffs offered evidence at the hearing that the client contact is valuable information to Redi-Mix. Without an injunction, Knox could contact these clients to solicit them away from Redi-Mix. Additionally, Knox could divulge the client contact to other companies, such as Express Chipping. The client contact is important information to keep confidential. The client contact is how the company builds and keeps relationships, and if that information is disclosed it could

damage the goodwill of the business. *See Transperfect Translations*, 594 F. Supp. 2d at 757. The client contact coupled with the pricing information, which was also given to Knox, could lead to more harm for Redi-Mix. Finally, Knox also had access to the employee list, which Redi-Mix alleges Knox has already divulged and misused. Doc. No. 6 ¶ 10. The use of Redi-Mix's confidential information is sufficient to establish irreparable harm. *Transperfect Translations*, 594 F. Supp. 2d at 757. Additionally, there is the threat of loss of goodwill with customers, which is also sufficient to establish irreparable harm. *Id.* A substantial threat of irreparable harm exists.

### III.  Whether the Threatened Injury Outweighs any Harm that May Result from the Injunction

Plaintiffs argue that the threatened injury outweighs the harm that may result to Knox. Doc. No. 6 ¶¶ 23–26. Plaintiffs contend that the injunction will not prevent Knox from working anywhere within the field or industry, but would simply enforce the noncompete agreement, which prevents him from contacting specific clients of Redi-Mix. *Id.* Therefore, Plaintiffs argue the balancing of hardships weighs in favor of granting the preliminary injunction. *Id.* ¶ 28.

Defendants in their briefing do not explicitly contest this argument. *See generally* Doc. No. 23. However, Defendants did argue that the limitations in the noncompete agreement are unreasonable and Plaintiffs did not suffer a threat of harm. *Id.* To the extent that these arguments apply to this element, they are unpersuasive. *Id.*

When balancing hardships it is important to look at the effect the loss of customers has on the business compared to the employee's ability to work. *Premier Polymers, LLC v. Wendt*, 2015 WL 4434551, at *7 (S.D. Tex. July 17, 2015). As previously discussed, Redi-Mix stands to suffer irreparable harm if the Court does not grant the injunction. Redi-Mix faces the loss of goodwill to its business and the misuse of its confidential information to solicit customers and

employees away from Redi-Mix. This threatened injury then needs to be compared to the limitations contained in the noncompete agreement. All of the limitations in the noncompete are reasonable or are reformed to be reasonable. Knox will only be restricted from speaking with any customers that were customers of Redi-Mix's during the time of his employment, or potential customers that were contacted by him or Redi-Mix within ninety (90) days prior to, or after, his termination about the concrete industry until August 11, 2017. The noncompete agreement is carefully tailored to prevent the injury to Redi-Mix and still allows Knox to work in the industry. Therefore, when comparing the threat of the irreparable harm to the reasonable limitations in the noncompete agreement, Redi-Mix's possible injury outweighs the harm that Knox could suffer as a result of the injunction. *Id.*

### IV.    Whether the Issuance of this Injunction Undermines the Public Interest

Finally, Plaintiffs argue that issuing a preliminary injunction in this case would not disserve the public interest and in fact would actually encourage it. Doc. No. 6 ¶ 29. It would "encourage employers to entrust confidential information and client relationships to key employees." *Id.* ¶ 29 (citing *Premier Polymers*, 2015 WL 4434551, at *7). In their briefing, Defendants do not contest that Plaintiffs have met this factor. Therefore, granting a preliminary injunction in this case would not undermine the public interest. Having met all four elements, the Court recommends **GRANTING** Redi-Mix's application for temporary injunction.

### V.    Bond

Under Federal Rule of Civil Procedure 65(c), when a court issues a preliminary injunction it must also order the movant to give a security in an "amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c). Defendants ask the Court to post a bond in excess

of $10,000,000 because the harm Express Chipping is likely to suffer will potentially run it out of business. Doc. No. 23 ¶ 8. However, this amount is excessive. The temporary injunction enjoins Knox for eight more months from conduct that violates the noncompete agreement; it does not enjoin Express Chipping.

After removal, a federal court can apply a bond from the state court proceeding. *Courtroom Sciences, Inc. v. Andrews*, 2009 WL 1313274, at *18 (N.D. Tex. May 11, 2009) (carrying over a $10,000 bond from the state court proceeding). This satisfies the requirement found in the Federal Rules of Civil Procedure. FED. R. CIV. P. 65(c). Here, Plaintiffs posted a $1,000 bond[2] for the September TRO, which was carried over to the March TRO. September TRO ¶ b; March TRO ¶ b. The Court recommends that this $1,000 bond now be applied to this preliminary injunction. If Defendants determine that amount is insufficient and can show that this amount should be increased, they may move for such relief within fourteen days of the Magistrate Judge's report. *Courtroom Sciences*, 2009 WL 1313274, at *18; *TGI Friday's Inc. v. Great Nw. Restaurants, Inc.*, 652 F. Supp. 2d 763, 774 (N.D. Tex. Aug. 20, 2009).

## RECOMMENDATION

Accordingly, the Court recommends that the application for preliminary injunction be **GRANTED IN PART** and **DENIED IN PART**. It should be denied as to the H&S contract and granted to enforce the Redi-Mix noncompete agreement. The Redi-Mix noncompete agreement should be reformed to prevent Knox from contacting any customers that were customers of Redi-Mix's during the time of his employment, or were potential customers that were contacted by him or Redi-Mix within ninety (90) days prior to, or after, his termination from employment with Redi-Mix about the concrete business. The remainder of the Redi-Mix noncompete agreement

---

[2]A bond in the amount of $1,000 is enough to satisfy a preliminary injunction for a non-compete agreement. *See, e.g.*, *Henson Patriot Limited Company, LLC v. Medina*, 2014 WL 4546973 (W.D. Tex. Sept. 11, 2014) (holding a $500 bond was sufficient to secure a preliminary injunction for a non-compete agreement).

shall be applied as it is written. The preliminary injunction will remain in effect until the end of the two years, which will be until August 11, 2017. The Court further recommends that the $1,000 bond paid in the state court proceeding be applied to this case.

Within fourteen days after receipt of the Magistrate Judge's report, any party may serve and file written objections to the findings and recommendations of the Magistrate Judge. 28 U.S.C. § 636(b).

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 2nd day of December, 2016.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE