| | | |
|---|---|---|
| REDI-MIX SOLUTIONS, LTD., and | § | |
| 2S TRANSPORT, LLC f/k/a H&S | § | |
| TRANSPORT, LTD., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action No. 6:16-cv-298-RWS-KNM |
| | § | |
| EXPRESS CHIPPING, INC., and | § | |
| STANLEY KEITH KNOX, | § | |
| | § | |
| *Defendants.* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are Defendants', Express Chipping, Inc. ("Express Chipping") and Stanley Keith Knox ("Knox") (collectively, "Defendants"), 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 18), Defendants' 12(b)(3) Motion to Dismiss for Improper Venue (Doc. No. 19), Defendants' 12(b)(6) Motion to Dismiss for Failure to State a Claim (Doc. No. 20), and Defendants' 12(e) Motion for More Definite Statement (Doc. No. 21). Plaintiffs, Redi-Mix Solutions, Ltd., ("Redi-Mix") and 2S Transport, LLC f/k/a/ H&S Transport, Ltd. ("H&S") (collectively, "Plaintiffs"), filed a response to Defendants' 12(b)(2) and 12(b)(3) Motions (Doc. No. 26) and Defendants' 12(b)(6) Motion (Doc. No. 27). Once the parties completed the briefing, the Court held a hearing on these motions. For the reasons stated below, the Court recommends that Defendants' motions be **DENIED**.

## BACKGROUND

Redi-Mix and Express Chipping directly compete in the business of concrete chipping, providing services related to cleaning and removing concrete from concrete mixer drums. Doc.

No. 17 at 2, 6. Redi-Mix hired Knox as the Vice President of Sales & Marketing. *Id* at 3. As a condition of his employment, H&S and Redi-Mix required Knox to sign employment contracts that each contained a nondisclosure agreement, non-solicitation agreement, and a noncompete agreement ("the H&S contract" and "the Redi-Mix contract" respectively, collectively "employment contracts"). *Id.* The relevant portions of the employment contracts state:

> Following the termination of employment with [Redi-Mix], for any reason, Stanley Knox agrees not to engage directly or indirectly in any business substantially similar to, or in competition with, the business of [Red-Mix], it [sic] successors or assigns, for a period of Two (2) Years, within a radius of 100 miles of Redi-Mix [sic] home address or within a Twenty-Five (25) mile radius of any customer in any area where he directly worked while employed with [Redi-Mix].

> Mr. Knox also agrees that for the above stated period of two years, he will have absolutely no contact with any customers that were customers of [Redi-Mix's] during the time of his employment, or potential customers that were contacted by him or [Redi-Mix] within ninety (90) days prior to, or after, his termination/voluntary leave from employment of [Redi-Mix].

> Mr. Knox also agrees that for a period of two (2) years following the termination of his employment with [Redi-Mix], he will not induce, recruit or solicit any of Redi-Mix's employees or any independent contractors which [Redi-Mix] uses, to terminate their employment or service with Redi-Mix and enter into another employment/contract arrangement with Stanley Knox or any third party.[1]

*Id.* Ex. A. at 7–8. Both agreements had a section that stated the proffered consideration for the employment contracts. *Id.* Ex. A. at 2, 6–7. Both H&S and Redi-Mix offered the promise to disclose confidential information as consideration. *Id.* Ex. A. at 2, 6–7.

On August 10, 2015, Redi-Mix terminated Knox's employment by a letter, which also reminded Knox of the employment contracts. *See generall*y *id.* Ex. C. After his termination, Knox started his employment with Express Chipping in Florida. *Id.* at 6. After Knox began his employment with Express Chipping, Redi-Mix discovered that Knox and Express Chipping

---

[1]Similarly, the H&S contract prohibits Knox from competing with H&S, contacting H&S customers, and contacting H&S employees.  Doc. No. 17 Ex. A. at 2–3.

contacted customers and employees to solicit them away from Redi-Mix. *Id.* Upon the discovery of Knox's alleged violations, Plaintiffs sent a demand letter to Defendants to cease and desist activities that were in violation of the employment contracts. *See generally id.* Ex. D. Plaintiffs then filed suit arguing Defendants continued to violate the employment contracts. Doc. No. 1 Ex. 3 at 8–9. Plaintiffs allege that Knox breached confidentiality obligations, violated the terms of the noncompete agreements, and misappropriated confidential information. *Id.* Plaintiffs also allege that Express Chipping tortiously interfered with the employment contracts, and that Express Chipping is liable for the torts of Knox under respondeat superior. *Id.*

Plaintiffs originally filed this suit in state court in Anderson County, the 369th Judicial District. Shortly thereafter, the state court entered a temporary restraining order. Doc. No. 1 Ex. 4 ("September TRO") at 12–15. The September TRO restrained Knox and Express Chipping from, among other things, "engaging directly or indirectly in any business substantially similar to, or in competition with, the business of Plaintiffs Redi-Mix and H&S within a radius of one hundred (100) miles of Palestine, Texas, or within a twenty-five (25) mile radius of any customer in any area where Knox directly worked while employed with Plaintiffs Redi-Mix and H&S." September TRO ¶ iii.

On March 28, 2016, the state court granted Plaintiffs' application for a second TRO ("March TRO"), and set a hearing on Plaintiffs' request for a preliminary injunction. Doc. No. 1 Ex. 3 at 18–20. The court's March TRO contained substantially the same language as the September TRO, with one addition: it restrained Knox and Express Chipping from competing with Plaintiffs' business "within a twenty-five (25) mile radius of any customer in any area where Knox directly worked while employed with Plaintiffs Redi-Mix and H&S *listed on Exhibit 'A.'*" March TRO ¶ iii (emphasis added). Exhibit A, attached to the March TRO, lists 934 customers.

On April 7, 2016, after the state court issued the March TRO, Defendants filed a notice of removal. *See generally* Doc. No. 1. On April 12, 2016, the Court issued an Order and Advisory, advising Plaintiffs to replead as necessary to comply with the federal pleading standard found in Federal Rule of Civil Procedure 8. *See generally* Doc. No. 5. On June 21, 2016, Plaintiffs filed their Third Amended Complaint to comply with these standards. *See generally* Doc. No. 22. On June 28, 2016, Defendants answered Plaintiffs' Third Amended Complaint and filed the present motions. *See generally* Doc. Nos. 18–22.

## APPLICABLE LAW

### *12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction*

There are generally two steps in determining whether a federal court may exercise personal jurisdiction over a nonresident defendant: (1) the forum state's long-arm statute must confer personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The Texas long-arm statute, Texas Civil Practice and Remedies Code Section 17.042, extends personal jurisdiction to the permissible limits of the Due Process Clause. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). As a result, only the second step of the inquiry is considered. *McFadin*, 587 F.3d at 759; *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007); *see also Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) ("Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis.").

The exercise of personal jurisdiction over a nonresident defendant must comport with the requirements of due process. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct 1026 (1987). The Due Process Clause protects an individual's right to be deprived of life,

liberty, or property only by the exercise of lawful power. *Giaccio v. Pennsylvania*, 382 U.S. 399, 403, 86 S.Ct. 518 (1966). This includes the notion that the Government may only impose burdens upon individuals in accordance with the valid laws of the land. *Id.* "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2181 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 160 (1945)).

A nonresident defendant may only be subject to judgment when the defendant has sufficient contacts with the sovereign "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co*., 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339 (1940)). There must be sufficient "minimum contacts" between a nonresident defendant and the forum for there to be personal jurisdiction in the forum. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 564 (1980) (citing *Int'l Shoe Co*., 326 U.S. at 316). Consideration is given to whether it is reasonable to require a corporation or individual to defend the suit in this forum. *Id.* at 292. To establish minimum contacts with the forum, a plaintiff must show that the defendant's conduct and connection with the forum is such that he should reasonably anticipate being haled into court in the forum state. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240 (1958).

In this case, Plaintiffs assert specific jurisdiction. Specific jurisdiction is a claim specific inquiry. *McFadin*, 587 F.3d at 759. A plaintiff may establish specific jurisdiction over a nonresident defendant by showing that the defendant "purposefully directed" his activities at residents of the forum and that each claim results from injuries that "arise out of or relate to" those activities. *Burger King Corp*., 471 U.S. at 472 (citing *Keeton v. Hustler Magazine, Inc*., 465 U.S.

770, 774, 104 S.Ct. 1473, 1478 (1984); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872 (1984)). When specific jurisdiction is asserted, due process requires consideration of: (1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *McFadin*, 587 F.3d at 759; *see also ITL Int'l., Inc. v. Constenia, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012). Defendants who "'reach out beyond one state' and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for consequences of their actions." *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. at 2183–84 (citing *Travelers Health Assoc. v. Virginia*, 339 U.S. 643, 647, 70 S.Ct. 927, 929 (1950)). Establishing a defendant's minimum contacts with the forum state requires contacts that are more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Id*.

### 12(b)(3) Motion to Dismiss for Improper Venue

If venue is not proper in the district or division where the case is filed, the case may be dismissed under Federal Rule of Civil Procedure 12(b)(3). Alternatively, under § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Additionally, under § 1404(a), "[f]or the convenience of the parties, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A party seeking transfer under § 1404(a) must show

"good cause" by demonstrating "that the transferee venue is clearly more convenient." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*In re Volkswagen II*") (en banc). The plaintiff's choice of venue is not a distinct factor in the analysis, but it is taken into account as part of the defendant's burden in proving the transferee venue is clearly more convenient. *Id.*

Under a § 1404(a) analysis, a court first must determine whether the plaintiff could have properly filed its case in the transferee venue. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*"). If that threshold is met, the court then must consider private and public interest factors. *Id.* The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial of a case easy, expeditious, and inexpensive." *Id.* The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of law or in the application of foreign law." *Id.* No single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 315.

## 12(b)(6) Motion to Dismiss Pursuant to Federal Rule of Civil Procedure

Courts utilize a "two-pronged approach" in considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, a court identifies and excludes legal conclusions that "are not entitled to the assumption of truth." *Id.* Second, a court considers the remaining "well-pleaded factual allegations." *Id.* Courts must accept as true all facts alleged in a plaintiff's complaint, and view the facts in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). A plaintiff's complaint survives a defendant's

Rule 12(b)(6) motion to dismiss if it includes facts sufficient "to raise a right to relief above the speculative level." *Id.* (quotations and citations omitted). Stated differently, a court must consider whether a plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### *12(e) Motion for More Definite Statement Under Federal Rule of Civil Procedure*

Rule 12(e) of the Federal Rules of Civil Procedure provides that a defendant may ask a court to require the plaintiff to amend its complaint with a more definitive statement if the plaintiff files a complaint that is "so vague or ambiguous that the [defendant] cannot reasonably prepare a response." FED. R. CIV. P. 12(e). Rule 12(e) requires that the party move for more definite statement before the party has filed its response. *Id.* In so doing, the defendant must "point out the defects complained of and the details desired." *Id.* While specific facts are not necessary; the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. However, a motion for more definite statement is inappropriate where the information sought can otherwise be obtained by discovery. *Mitchell v. E-Z Way Towers, Inc.,* 269 F.2d 126, 132 (5th Cir. 1959).

## ANALYSIS

### I. Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to 12(b)(2)

Defendants contend that Express Chipping[2] does not have minimum contacts with the State of Texas sufficient to justify specific jurisdiction. *See generally* Doc. No. 18. Defendants maintain that Express Chipping is a Nevada corporation with its principal place of business in California. *Id.* at 4. Further, Defendants maintain that Express Chipping merely hired a Florida man in Florida. *Id.* Accordingly, Defendants assert Express Chipping has no contacts with the State of Texas. *Id.*

---

[2]Defendants do not contest the Court's jurisdiction over Knox.

Defendants argue that exercising jurisdiction over Express Chipping in this case is unconstitutional because the controversy has nothing to do with Texas, and keeping the case in Texas would solely be for the Plaintiffs' convenience. *Id.* at 4–5. Defendants assert that Texas has no interest in adjudicating the dispute and it would be more efficiently litigated in Nevada, California, or Florida. *Id.* at 5.

Plaintiffs contend that Express Chipping made intentional contacts with the State of Texas sufficient to "purposefully avail" itself to justify specific jurisdiction. *See generally* Doc. No. 26. Plaintiffs assert that Express Chipping's contacts with the State of Texas give rise to an intentional tort that is the basis of the lawsuit. *Id.* at 10 (citing *ATX Innovation, Inc. v. Velocity Mobile Ltd.*, 2016 WL 918052, at *3 (W.D. Tex. Mar. 8, 2016)). Plaintiffs allege that Express Chipping solicited no fewer than thirteen of Plaintiffs' employees who reside in Texas and solicited customers with operations in Texas. *Id.* at 5–6, 9. Plaintiffs argue that Express Chipping's solicitation of these employees and customers is sufficient to demonstrate minimum contacts with Texas, which directly relate to the cause of action. *Id.* at 9 (citing *Holk v. USA Managed Case Org. Inc.*, 149 S.W.3d 769, 776 (Tex. App.—Austin 2004, no pet.)). Plaintiffs contend that they have made a *prima facie* showing of minimum contacts; therefore, the burden shifts to Defendants to show "that traditional notions of fair play and substantial justice would be violated by the exercise of jurisdiction." *Id.* at 11 (citing *Luv N'Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006)).

In order for the Court to have specific jurisdiction over each claim, it must be established that: (1) Express Chipping has minimum contacts with Texas, *i.e.*, that it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities in Texas; (2) each of Plaintiffs' claims arise out of or result from Express Chipping's

forum-related contacts; and (3) exercising personal jurisdiction over Express Chipping is fair and reasonable. *See McFadin*, 587 F.3d at 759; *see also ITL Int'l, Inc.*, 669 F.3d at 498. Specific jurisdiction is a claim specific inquiry. *McFadin*, 587 F.3d at 759. Here, Plaintiffs allege two claims against Express Chipping: tortious interference with contract and respondeat superior. The Court will address each claim in turn.

Plaintiffs allege Express Chipping is liable for tortious interference with contract. Doc. No. 17 at 10–11. Accordingly, Plaintiffs must first demonstrate that Express Chipping purposely directed its activities toward Texas or purposefully availed itself to Texas. *See McFadin*, 587 F.3d at 759; *see also ITL Int'l, Inc.*, 669 F.3d at 498. Under Texas Civil Practice and Remedies Code Section 17.042(3), "a nonresident does business in this state if the nonresident: . . . recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state." Recruiting that happens over the phone is sufficient to establish that the nonresident does business in Texas. *Guajardo v. Deanda*, 690 F. Supp. 2d 539, 547–53 (S.D. Tex. 2010).

Here, Plaintiffs allege Defendants have contacted at least three of Plaintiffs' current customers, two with operations in Texas. Doc. No. 26 at 6; Doc. No. 26 Ex. G at 3. While these two customers, Argos and Cemex, have operations in Texas, Plaintiffs also allege that Knox contacted the Argos Plant in Georgia and the Cemex Plant in Florida. *Id.* Ex. G. at 3; Doc. No. 17 at 10. Accordingly, even though the customers may have operations in Texas, it is not clear that contact was made with the Texas plants. However, Plaintiffs also contend Express Chipping made contact with no fewer than thirteen of Plaintiffs' employees. Doc. No. 26 at 9, 11. The uncontroverted affidavits of five out of the thirteen employees establish that they were contacted over the phone by a representative of Express Chipping for employment with Express Chipping. *Id.* Exs. B–F. Additionally, the affidavits establish that the employees reside in Texas. *Id.* at 6, 11;

Doc. No. 26 Exs. B–F. Recruiting these employees is enough to show Express Chipping has minimum contacts with the State of Texas. *Guajardo*, 690 F. Supp. 2d at 547–53.

Additionally, if Express Chipping did commit a tort, at least part of the tortious activity occurred in Texas. Under the Texas Long Arm Statute, committing a tort in whole or in part in Texas is the basis for jurisdiction over a nonresident. Tex. Civ. Prac. & Rem. Code § 17.042(2). The elements of tortious interference with contract are: "(1) the existence of a contract subject to interference[;] (2) a willful and intentional act of interference[;] (3) the intentional act was a proximate cause of damages[;] and (4) actual damages or loss." *Greenville Automatic Gas Co. v. Automatic Propane Gas and Supply, LLC*, 465 S.W.3d 778, 787 (Tex. App.—Dallas 2015, no pet.) (citing *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)). Here, Plaintiffs contend that they sent notice to both Defendants informing them that Knox was subject to the employment contracts. Doc. No. 17 at 6. After this notice was sent, Plaintiffs claim: "[Knox] and Defendant Express have conspired to destroy the business of Plaintiffs by knowingly and willfully violating both the terms of the Non-Compete Agreements, TRO and TI by soliciting Plaintiffs' customers and employees." *Id.* at 10. The alleged solicitation of employees in violation of the non-compete agreements is the willful and intentional act of interference necessary for a successful cause of action of tortious interference with contract. Because the content of these phone conversations gave rise to an intentional tort cause of action, this alone constitutes purposeful availment. *Collins v. GospoCentric*, 2001 WL 194985, at *2 (N.D. Tex. Feb. 22, 2001).

Because Express Chipping has minimum contacts with Texas, the Court must determine if Plaintiffs' claim of tortious interference with contract arises out of these contacts. *McFadin*, 587 F.3d at 759; *see also ITL Int'l, Inc.*, 669 F.3d at 498. "In other words, there must be a sufficient 'nexus between the defendants' contacts with [the forum state] and the plaintiffs' [underlying]

claims.'" *The Leader's Inst., LLC v. Jackson*, 2015 WL 4508424 (N.D. Tex. July 24, 2015) (citing *ITL Int'l, Inc.*, 669 F.3d at 500). As just established, the act of soliciting employees is part of the tortious activity that is the basis for the claim of tortious interference with contract. Accordingly, the contact of employees has a sufficient nexus to the cause of action of tortious interference.

Therefore, because Plaintiffs satisfied their burden under the first two prongs, the burden shifts to the Defendants to show that exercising jurisdiction over Express Chipping is unfair or unreasonable. *McFadin*, 587 F.3d at 759; *ITL Int'l, Inc.*, 669 F.3d at 498; *Luv N'Care, Ltd.*, 438 F.3d at 473. The fundamental fairness considerations include: "(1) the defendant's burden [defending itself in the forum state]; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 421 (5th Cir. 1993).

Plaintiffs have an interest in convenient and effective relief. *Id.* Plaintiffs sued Express Chipping and Knox in one lawsuit. *See generally* Doc. No. 17. Defendants do not challenge jurisdiction as to Knox. *See generally* Doc. No. 18. "The Texas forum will bring all the parties into one courtroom for a single resolution." *Ruston Gas Turbines*, 9 F.3d at 421. Texas, as the forum state, has an interest in adjudicating a dispute that involves the solicitation of Texas employees. *See id.* The Court has an interest in the efficient resolution of the claims at issue. Express Chipping provided little evidence of the burden it would suffer defending itself in Texas. *See generally* Doc. No. 18. The Court notes that Express Chipping is a Nevada corporation with its principal place of business in California, but it is not an unreasonable burden to require Express Chipping to defend a lawsuit in Texas when it has purposeful contacts with Texas. After receiving notice from Texas that the solicitation of employees violated the terms on Knox's employment

contracts, Express Chipping could reasonably expect to be haled into court in Texas for the solicitation of Texas employees from a business located in Texas. The exercise of personal jurisdiction over Express Chipping on the claim of tortious interference with contract does not offend the traditional notions of fair play and substantial justice.

Additionally, Plaintiffs attempt to hold Express Chipping liable under a claim of respondeat superior for Knox's torts.[3] Doc. No. 17 at 12. Personal jurisdiction for claims of respondeat superior are based on the actions of the employee that committed the tort. *See Paz v. Castellini Co., L.L.C.*, 2007 WL 3342214, at *8 (S.D. Tex. Nov. 8, 2007) (analyzing the contacts of the employee that gave rise to the cause of action to determine if there was specific jurisdiction over the employer); *see also Bruno's Inc. v. Arty Imps., Inc.*, 119 S.W.3d 893, 899 (Tex. App.—Dallas 2003, no pet.) (holding that because the defendant admitted the court's personal jurisdiction over the employee in a claim for respondeat superior, the only necessary allegation to establish jurisdictional acts was that the employee acted within the course and scope of his employment in committing the tort).

Here, Plaintiffs attempt to hold Express Chipping liable for the only tort alleged against Knox: misappropriation of confidential information. Doc. No. 17 at 12. Defendants have not challenged the Court's personal jurisdiction over Knox. *See generally* Doc. No. 18. The Court's personal jurisdiction over Knox on the claim of misappropriation of confidential information is clear. Knox received the confidential information in Texas, Knox promised to keep the information confidential in Texas, and, as mentioned above, contact was made by both Express Chipping and Knox with Redi-Mix employees in Texas. Doc. No. 26 at 6, 11; Doc. No. 26 Exs. B–F. Further,

---

[3]The Court notes that, in the briefing, neither party made express mention of the Court's jurisdiction over Express Chipping for Plaintiffs' claim of respondeat superior. However, because Defendants challenged personal jurisdiction as to Express Chipping, and personal jurisdiction is a claim by claim analysis, the Court will address the analysis for personal jurisdiction over Express Chipping on Plaintiffs' claim of respondeat superior.

Plaintiffs have alleged that Knox "was an employee, independent contractor, and/or agent of Defendant Express, receiving compensation directly or indirectly." Doc. No. 17 at 12. Additionally, Plaintiffs assert that while misappropriating confidential information, Knox acted for "his own benefit/personal gain and that of Defendant Express." *Id.* These facts go toward establishing Knox acted in furtherance of Express Chipping's business and, accordingly, in the course and scope of employment. *Bruno's*, 119 S.W.3d at 898–99. As such, these are the only jurisdictional facts necessary to establish personal jurisdiction over Express Chipping for Plaintiffs' claim of respondeat superior. *See Paz*, 2007 WL 3342214, at *8; *see also Bruno's*, 119 S.W.3d at 899.

## II. Motion to Dismiss for Improper Venue Pursuant to 12(b)(3), or in the alternative, Motion to Transfer

Defendants ask the Court to dismiss Plaintiffs' claims for improper venue or in the alternative to transfer Plaintiffs' claims to Florida.[4] *See generally* Doc. No. 19. Plaintiffs respond that not only is venue proper in the Tyler Division of the Eastern District of Texas, but that the Eastern District of Texas is the more convenient district. Doc. No. 26 at 12–14.

### A. Motion to Dismiss for Improper Venue

Defendants assert that Express Chipping is a Nevada Corporation with its principle place of business in California. Doc. No. 19 at 1. Additionally, Defendants assert that Knox is a resident of Florida, and is restricted to Florida by parole. *Id.* at 2. Accordingly, Defendants contend that because neither Defendant resides in the Eastern District, or even in Texas, venue is improper. *Id.* at 3. Further, Defendants argue that the substantial events giving rise to the claims occurred in Florida. *Id.* Defendants contend that Express Chipping hired Knox in Florida, and this gives rise

---

[4]Defendants initially claimed that the Central District of California would be a district with proper venue, but at the hearing on the motion Defendants stated that because Knox is not a resident of California, no district in California has proper venue. The Court agrees and will not address the merits of a transfer to California.

to the claims Plaintiffs asserted. *Id.* Therefore, Defendants argue that venue in the Eastern District of Texas is improper and the case should be dismissed. *See generally id.* Plaintiffs respond that venue is proper as to both Knox and Express Chipping. *See generally* Doc. No. 26.

 "In actions involving multiple defendants and multiple claims, the plaintiff must establish that venue is proper as to each defendant and as to each claim." *Collins v. Doe*, 2012 WL 1414246, at *3 (S.D. Tex. Apr. 23, 2012). Accordingly, the Court will proceed by analyzing venue as to each Defendant and each claim.

### 1. Knox

Plaintiffs assert that venue is proper as to Knox because he contractually agreed to venue in Texas. Doc. No. 26 at 12. Venue selection clauses are treated similarly to forum selection clauses. *Alliance Health Grp., LLC v. Bridging Health Option, LLC*, 553 F.3d 397, 399 (5th Cir. 2008) (citing *Duffy & McGovern Accommodation Servs. v. QCI Marine Offshore, Inc.*, 448 F.3d 825, 826 (5th Cir. 2006); *Collin Cty. v. Siemens Bus. Servs., Inc.*, 250 F. App'x 45 (5th Cir. 2007)). Forum selection clauses are *prima facie* valid. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590 (1991) (citing *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. 1907, 32 L.Ed.2d 513 (1972)). Accordingly, venue selection clauses are *prima facie* valid. *See id.*; *Alliance Health Grp.*, 553 F.3d at 399.

Here, the employment contracts Knox entered into with H&S and Redi-Mix included a section titled "governing law." Doc. No. 17 Ex. A. This section states: "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of Texas. Stanley Knox agrees to personally submit to the jurisdiction and venue that Redi-Mix[5] headquarters' [sic] is located in at the time this cause of action would or may arise." *Id.* Ex. A. Defendants do not dispute the

---

[5]The employment contract with H&S similarly states that Knox will agree to jurisdiction and venue where H&S Transport headquarters are at the time the cause of action may arise.

validity of the clause. *See generally* Doc. No. 19. Accordingly, Knox agreed to venue in Anderson County, which is located in the Tyler Division of the Eastern District of Texas. Therefore, venue is proper as to each claim asserted against Knox.

## 2. Express Chipping

Plaintiffs contend that the solicitation of Redi-Mix's employees is a substantial part of the events that give rise to the claims asserted against Express Chipping. *See generally* Doc. No. 26. Therefore, Plaintiffs argue venue is proper under 28 U.S.C. § 1391(b)(2). *Id.* at 13. Plaintiffs assert two claims against Express Chipping; venue needs to be proper as to both claims. Venue is proper in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). A substantial part of the events does not mean the single triggering event of a cause of action, but rather looks to the entirety of the claim. *Mt. Hawley Ins. Co. v. Baddley Chem. Co.*, 2006 WL 2022909, at *1 (S.D. Tex. July 17, 2006) (citing *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001)). As such, venue may be proper in more than one district. *Id.*

First, Plaintiffs attempt to hold Express Chipping liable under a claim of respondeat superior for the torts Knox committed while he was acting within the course and scope of his employment for Express Chipping. Doc. No. 17 at 12. The only tort Plaintiffs allege Knox committed is misappropriation of confidential information. *See generally id.* Accordingly, a substantial part of the events giving rise to the claim of misappropriation of confidential information must arise in the Eastern District of Texas, Tyler Division for venue to be proper. Plaintiffs presented argument at the hearing that Knox obtained the information of the allegedly misappropriated information in Anderson County: the customer list; the employee list; the pricing information; and any other confidential information. Actually receiving the confidential

information is essential to a valid claim of misappropriation of confidential information. *See generally IASIS Healthcare Corp. v. Apollo Physicians of Tex., P.A.*, 2011 WL 4998644, at \*2 (Tex. App.—Corpus Christi Oct. 20, 2011, no pet.). Accordingly, the gathering of the confidential information is a substantial part of the events that give rise to the claim.

Additionally, Plaintiffs assert a claim of tortious interference with contract against Express Chipping. As stated in the previous section regarding Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Plaintiffs argue that "[Knox] and Defendant Express have conspired to destroy the business of Plaintiffs by knowingly and willfully violating both the terms of the Non-Compete Agreements, TRO and TI by soliciting Plaintiffs' customers and employees." Doc. No. 17 at 10. The contract, which is the basis for this cause of action, was signed in Anderson County. Redi-Mix gave the employee information and other confidential information to Knox in Anderson County. The cease and desist letter Redi-Mix sent to Knox and Express Chipping was mailed from Anderson County. Additionally, Knox and/or Express Chipping made contact with certain employees in Anderson County. These actions go toward the elements of the existence of a valid contract and the willful and intentional act of interference. As such, they are a substantial part of the events giving rise to the cause of action for tortious interference with contract. Accordingly, venue is proper with this Court and this District as to Express Chipping for both respondeat superior and tortious interference.

### B.  Motion to Transfer

Defendants alternatively ask the Court to transfer the case to Florida, because a substantial part of the events giving rise to Plaintiffs' claims occurred in Florida. Doc. No. 19 at 4. A court may transfer a case under either 28 U.S.C. § 1404(a) or under 28 U.S.C. § 1406. However, because

the Court already made the determination that venue is proper in the Eastern District of Texas, Tyler Division, the Court will proceed under a § 1404(a) analysis.

## 1. Threshold Inquiry

Under § 1404(a), a "district court may transfer any civil action to any other district where it might have been brought." 28 U.S.C. § 1404(a). Thus, the "threshold question is whether the suit could have been brought in the proposed transferee district." *Vargas v. Seamas Drivers Int'l, LLC*, 2011 WL 1980001, at *3 (E.D. Tex. May 20, 2011) (citing *In re Volkswagen I*, 371 F.2d at 203).

Defendants assert that venue is proper in the Middle District of Florida, Tampa Division. Doc. No. 19 at 2. Plaintiffs do not contest that the Middle District of Florida is also a judicial district with proper venue. Therefore, the threshold inquiry is met.

## 2. Private and Public Interest Factors

Because the Court determined that the Middle District of Florida is a court of proper venue, the Court must now determine the "relative conveniences of the current district against the transferee district." *Vargas*, 2011 WL 1980001, at *3. In the Fifth Circuit, the movant bears the burden of showing "good cause," which is met when "the movant demonstrate[s] that the transferee venue is clearly more convenient." *Id.* (citing *In re Volkswagen II*, 545 F.3d at 315). There are several private and public interest factors that the movant can use to demonstrate the convenience of the transferee court. *Id.* (citing *Volkswagen II*, 545 F.3d at 315).

However, in their motion, Defendants make no reference to the convenience of the Middle District of Florida over the current district or any reference to any of the private or public interest factors. *See generally* Doc. No. 19. Plaintiffs respond that the convenience of non-party witnesses is given the most weight in the analysis of deciding whether to transfer venue under § 1404(a).

Doc. No. 26 at 14 (citing *Woolf v. Mary Kay Inc.*, 176 F. Supp. 2d 642, 650 (N.D. Tex. 2001); *Ternium Int'l U.S.A. v. Consol. Sys.*, 2009 WL 464953, at *4 (N.D. Tex. Feb. 24, 2009)). According to Plaintiffs, many of the non-party witnesses reside in Texas and they argue the Court should deny Defendants' Motion to Transfer. *Id.* Because the burden is on the movants, and the movants here have offered no argument as to why the Middle District of Florida would be more convenient, Defendants have failed to meet their burden.

### III. Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to 12(b)(6)

Defendants ask the Court to dismiss Plaintiffs' claims for failure to state a claim upon which relief can be granted. *See generally* Doc. No. 20. Defendants contend that Plaintiffs do not state a plausible claim of breach of confidentiality obligations, misappropriation of confidential information, violation of the noncompete agreements, or respondeat superior. *Id.*

#### A. Violation of the Noncompete

Defendants contend that Plaintiffs have not stated a plausible claim for violation of the noncompete agreements. *Id.* at 3. A valid claim for violation of a noncompete must first demonstrate that there is a valid and enforceable noncompete agreement. *See Light v. Centel Cellular Co. of Tex.*, 883 S.W.2d 642, 643–44 (Tex. 1994) *overruled on other grounds by Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 772 (Tex. 2011). The Texas Business and Commerce Code requires that a noncompete agreement be ancillary to or part of an otherwise enforceable agreement at the time the agreement is made. TEX. BUS. & COMM. CODE § 15.50. Here, at the same time the parties entered into the noncompete agreements, Knox also entered into employment contracts containing a nondisclosure agreement with both H&S and Redi-Mix. Doc. No. 17 at 3. Each contract listed the proposed consideration for the agreement. *Id.* Ex. A.

Defendants' sole argument against the validity of the noncompete agreement attacks the consideration of the promise to disclose confidential information. *See generally* Doc. No. 20. Defendants make no distinction between the two different employment contracts or the two different Plaintiffs in their motion. *See generally id.* Defendants' argument is as follows:

> The covenants not to compete in this case were ancillary to or part of an employment contract that contained a nondisclosure agreement. The consideration for the nondisclosure agreement was confidential information[,] which was plaintiffs' interest worthy of protection. Because that information is not actually confidential[,] it cannot be consideration under the nondisclosure agreement nor is it an interest worthy of protecting. Because the consideration for the confidentiality agreement has failed[,] it is unenforceable and the covenant not to compete is not ancillary to or part of an otherwise enforceable agreement that reasonably relates to an interest worthy of protection.

*Id.* at 3. In their 12(b)(6) Motion, Defendants do not argue that the promise to give confidential information fails for any other reason. *See generally id.* Additionally, Defendants do not contest the validity of any other method of consideration offered by either plaintiff. *See generally id.*

Defendants made the same argument in their Response to Plaintiffs' Application for Temporary Injunction. *See generally* Doc. No. 23. The Report and Recommendation ("The Report") regarding Plaintiffs' Temporary Injunction addressed this argument and is hereby incorporated by reference. Doc. No. 46 at 12–14. Briefly summarized, The Report concluded that Plaintiffs' public disclosure of the customer list did not affect the consideration for the noncompete agreement because "at the time the agreement was made" the customer list was confidential. Doc. No. 46 at 13–14. As stated above, this is Defendants' sole argument as to the validity of the noncompete agreements. Accordingly, Plaintiffs' claim for violation of the noncompete agreement survives Defendants' Motion to Dismiss for Failure to State a Claim.

### B. Breach of Confidentiality Obligations

Defendants argue that because Plaintiffs publicly disclosed the customer list, Plaintiffs "can no longer prosecute their claims for breach of confidentiality obligations." Doc. No. 20 at 2.

Plaintiffs respond that Knox was also given access to employee and customer contacts, not just the customer list, and, as such, Plaintiffs can still pursue claims for breach of confidentiality obligations. Doc. No. 27 at 2.

Because the claim of breach of confidentiality obligations arises from the employment contract, the plaintiff must sufficiently plead the elements for breach of contact. *See Dresser-Rand Co. v. Schutte & Koerting Acquisition Co.*, 2012 WL 460275, at *6 (S.D. Tex. Feb. 13, 2012).

> A party claiming breach of contract has the burden to prove the elements of that cause of action, which include (1) the existence of a valid contract between the plaintiff and defendant, (2) the plaintiff performed, (3) the defendant breached the contract, and (4) the plaintiff was damaged as a result of the breach.

*Id.* (citing *Calce v. Dorado Exploration, Inc.*, 309 S.W.3d 719, 733–34 (Tex. App.—Dallas 2010, no pet.)).

Defendants challenge the first element: the existence of a valid contract between plaintiff and defendant. As stated above, Defendants contend that the contract containing the confidentiality agreement is not supported by consideration because of the public disclosure of the customer list. Doc. No. 20 at 3. However, as addressed above, there is a plausible claim of valid consideration; therefore, Plaintiffs sufficiently pleaded the existence of a valid contract to survive a motion to dismiss.

Additionally, Defendants attack the fourth element: that plaintiff was damaged as a result of the breach. However, taking the well-pleaded facts in the complaint as true, Defendants contacted customers before the public disclosure of the customer list, and Plaintiffs suffered lost profits as a result of these contacts. Doc. No. 17 at 10. Accordingly, Plaintiffs sufficiently pleaded they were damaged as a result of the alleged breach of confidentiality obligations regarding the customer list. However, even if Plaintiffs do not suffer damage from the disclosure of the customer list, Plaintiffs have still sufficiently alleged that they were damaged by the disclosure of other

confidential information. For example, Plaintiffs contend that Redi-Mix gave Knox access to their employees' contacts and Knox and/or Express Chipping contacted employees to solicit them away from Redi-Mix. *Id.* at 6. These allegations are sufficient to establish a plausible claim of damage as a result of the alleged breach. Accordingly, the claim survives a motion to dismiss.

### C. Misappropriation of Confidential Information

Defendants also contend that Plaintiffs can no longer pursue a claim for misappropriation of confidential information because of the public disclosure of the customer list. Doc. No. 20 at 4. Again, Plaintiffs respond that Plaintiffs gave Knox more confidential information than just the customer list. Doc. No. 27 at 2.

Texas courts do not recognize a "cause of action for misappropriation of confidential information that is not either secret or substantially secret."[6] *IASIS Healthcare Corp.*, 2011 WL 4998644, at *2 (citing *Stewart & Stevenson Servs., Inc. v. Serv-Tech, Inc.*, 879 S.W.2d 89, 99 (Tex. App.—Houston [14th Dist.] 1994, writ denied)). Taking the well-pleaded facts as true, the alleged misappropriation began before suit was filed and before the customer list was publicly disclosed. At that time, "none of the information provided to Defendant Knox pursuant to paragraph 2 of the Employment Agreement was publically available and had always been maintained in the strictest confidence." Doc. No. 17 at 5. Defendants make no contention in their motion to dismiss that the customer list was not secret or substantially secret before it was attached to the March TRO. *See generally* Doc. No. 20. Accordingly, the allegations are enough to survive a 12(b)(6) motion to dismiss.

---

[6]The Court uses six factors to determine whether the information was kept secret: "(1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of the measures taken to guard the secrecy of the information; (4) the value of the information to the business and to its competitors; (5) the amount of effort or money expended by the business in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *IASIS Healthcare*, 2011 WL 4998644, at *2.

Even if the customer list was not kept secret, Defendants overlook Plaintiffs' other allegations of information Knox misappropriated. Plaintiffs allege that the employee list that Plaintiffs gave to Knox was private information, and that Knox misappropriated that information to solicit employees away from Redi-Mix. *See* Doc. No. 17 at 4–6. Accordingly, because Defendants' only argument is that Plaintiffs cannot pursue a claim of misappropriation of confidential information due to the public disclosure of the customer list, the claim survives a motion to dismiss.

### D. Respondeat Superior

Finally, Defendants assert that Plaintiffs have not stated which of Knox's alleged torts Express Chipping is liable for under respondeat superior. Doc. No. 20 at 4. Plaintiffs contend that, "the tortious conduct, Misappropriation of Confidential Information, by Defendant Knox for which Defendant Express should be held liable for under respondeat superior is set forth in Plaintiffs['] Third Amended Complaint." Doc. No. 27 at 3.

In order for Plaintiffs to state a plausible claim of respondeat superior, Plaintiffs must allege that Knox committed a tort while "acting within his general authority, in furtherance of [Express Chipping's] business, and to accomplish an objective for which [Knox] was employed." *Bruno's*, 119 S.W.3d at 898–99 (citing *Gonzalez v. Ison-Newsome*, 68 S.W.3d 2, 5 (Tex. App.—Dallas 1999), *pet. dism'd w.o.j.*, 73 S.W.3d 178 (Tex. 2001)). Defendants only argue that Plaintiffs have not claimed a tort for which Knox is liable. Doc. No. 20 at 4. Plaintiffs' Third Amended Complaint only contains one cause of action against Knox that has its basis in tort: misappropriation of confidential information. Doc. No. 17 at 12. Accordingly, Plaintiffs sufficiently pleaded a tort that Express Chipping can be liable for under respondeat superior to survive a motion to dismiss.

## IV. Motion for More Definite Statement Pursuant to 12(e)

Defendants ask the Court for a more definite statement. *See generally* Doc. No. 21. Defendants request that the Court require Plaintiffs to amend three specific aspects of their Complaint. *See generally id.* The Court will address each in turn.

Defendants contend that "plaintiffs have failed to allege, even categorically, what information Knox disclosed in breach of his confidentiality obligations or misappropriated." *Id.* at 2. Defendants assert that they are not able to properly defend themselves without this information. *Id.* However, a motion for more definite statement should not be used "'to assist in getting the facts in preparation for trial;'" that information is "more properly obtained via discovery." *Burling Ins. Co. v. Ranger Specialized Glass, Inc.*, 2012 WL 6569783, at *2 (S.D. Tex. Dec. 17, 2012) (quoting *Mitchell*, 269 F.2d at 132). Here, Defendants seek the information that Knox disclosed to help prepare a defense rather than a response. Accordingly, it is "more properly obtained via discovery," instead of requiring Plaintiffs to amend their pleading.

Additionally, Defendants assert that Plaintiffs have not specifically alleged "what conduct of defendant Knox constitutes a breach of his obligations within a geographical limitation of any valid covenant not to compete." Doc. No. 21 at 2. Further, Defendants contend that "Plaintiffs have not alleged what specific geographical regions are subject to the noncompete." *Id.* However, Plaintiffs attached the employment contracts as an exhibit to the complaint. Doc. No. 17 Ex. A. The employment contracts identify the geographical restrictions of the noncompete agreements. *Id.* Ex. A. Further, the employment contracts identify the conduct that Knox is prohibited from engaging in. *Id.* Ex. A. Lastly, the complaint identifies conduct of Knox that is in violation of the employment agreements. *See generally id.* As described, the facts are enough to state a plausible claim of relief and enough for Defendants to form a responsive pleading.

Defendants argue that Plaintiffs have not identified what "tortious conduct of Knox" Express Chipping is liable for under respondeat superior. Doc. No. 21 at 2. Defendants contend that they cannot "prepare a proper defense to such vague claims." *Id.* However, as discussed in the previous section regarding Defendants' 12(b)(6) Motion, the only tort Plaintiffs allege against Knox is misappropriation of confidential information. For this reason, the allegation of respondeat superior is not so vague as to render it impossible to prepare a response, which is the purpose of a motion for a more definite statement.

In addition to the previously established reasons, on the same day that Defendants filed their 12(e) Motion, they also filed their Answer to Plaintiffs' Third Amended Complaint.[7] Doc. No. 22. The Court should only grant a 12(e) motion when it finds that the pleading at issue is "so vague or ambiguous that the opposing party cannot respond, even with a simple denial . . . in good faith or without prejudice to himself." 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1376 (3d ed. 2004). Here, Defendants have already filed a responsive pleading, and even though it is a simple denial, Defendants "cannot show as required by Rule 12(e), that the original pleading is 'so vague or ambiguous' such that [they] 'cannot reasonably be required to respond.'" *Ybarra v. Wal-Mart Stores, Inc.*, 2006 WL 4659837, at *1 (W.D. Tex. Oct. 10, 2006) (quoting FED. R. CIV. P. 12(e)).

## RECOMMENDATION

Accordingly, the Court recommends that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Motion to Dismiss for Improper Venue or, in the alternative, Motion to

---

[7]Under Federal Rule of Civil Procedure 12(e), a motion for a more definite statement *must* be filed before a responsive pleading is filed. FED. R. CIV. P. 12(e) (emphasis added). Because Defendants' Motion for More Definite Statement was filed on the same day as its Answer, the motion may have been filed before the answer and, therefore, is not barred under a strict reading of Rule 12(e). *Ybarra v. Wal-Mart Stores, Inc.*, 2006 WL 4659837, at *1 (W.D. Tex. Oct. 10, 2006).

Transfer, Motion to Dismiss for Failure to State a Claim, and Motion for More Definite Statement be **DENIED**.

Within fourteen days after receipt of the Magistrate Judge's report, any party may serve and file written objections to the findings and recommendations of the Magistrate Judge. 28 U.S.C. § 636(b).

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 9th day of February, 2017.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE